IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-02063-MSK-CBS

ANN MARIE MILLER,

        Plaintiff,

v.

TAMRA BENNETT,

        Defendant.

---

**MAGISTRATE JUDGE'S ORDER AND RECOMMENDATION ON
PENDING MOTIONS**

---

Magistrate Judge Shaffer

    This matter comes before the court on *pro se* Plaintiff Ann Marie Miller's Motion for

Default Judgment (doc. #35), filed on January 2, 2013, and Defendant Tamra Bennett's[1]

Combined Motion to Dismiss or Transfer (hereinafter "Combined Motion") (doc. #37), filed on

January 7, 2013.  Ms. Miller submitted her Answer to Defendant's Combined Motion to Dismiss

or Transfer (doc. #38) on January 8, 2013.  On January 10, 2013, Ms. Bennett filed as an exhibit

in support of her Combined Motion a "Contract for Deed" (doc. #42) purportedly signed by the

parties on February 2, 2012 and notarized by Jennifer L. Tritt in San Diego County, California.

On April 4, 2013, Ms. Miller filed a number of exhibits (doc. #53) she contends "prove" that the

parties agreed "that venue was in Colorado."  Included among those exhibits was a different

---

[1]At the time she moved to dismiss or transfer this action, Ms. Bennett was proceeding as
a *pro se* defendant.  Counsel entered an appearance for Ms. Bennett on May 3, 2012.

1

version of the "Contract for Deed" containing a handwritten choice of venue provision and other

notations, but not Ms. Tritt's notarization.  Defendant filed a Motion to Supplement Combined

Motion to Dismiss or Transfer (doc. #58) on May 3, 2013, a Second Motion to Supplement

Combined Motion to Dismiss or Transfer (doc. #66) on May 22, 2013, and a Third Motion to

Supplement Combined Motion to Dismiss or Transfer (doc. #74) on June 13, 2013.

The court has carefully reviewed the pending motions and all related briefs and exhibits,

as well as the entire court file and pertinent case law.  I also have considered the exhibits

tendered by Defendant Bennett during the hearing on June 7, 2013, and reviewed transcripts of

hearings on May 9, 2013 and June 7, 2013.

## PROCEDURAL HISTORY

Ms. Miller commenced this action on August 6, 2012 with the filing of her original

Complaint (doc. #1).  That pleading asserted a single claim against Tamra Bennett for breach of

contract.  Plaintiff filed an Amended Complaint (doc. #4) on August 13, 2013, again asserting a

claim for breach of contract.  On August 23, 2013, Ms. Miller filed her Second Amended

Complaint (doc. #8), asserting claims for breach of contract and fraud.  Plaintiff alleges that she

"entered into a Contract for Deed with Tamra Bennett as the seller of the property," based on

negotiations that "took place in Colorado."  Ms. Miller further alleges that "the contract contains

a choice of venue clause stating any case must be heard in Colorado."  The Second Amended

Complaint states that Ms. Bennett "refused to record the deed, depriving plaintiff of the

contracted for value, $250,000," and that Ms. Bennett "refused to provide Schedule A, as

required by the contract, and destroyed the first page of the plaintiff's original contract for deed,

by grabbing it out of the plaintiff's hand, which made it impossible for the plaintiff to record it."

2

Finally, the second claim for relief alleges that Ms. Bennett misrepresented the rental amounts generated by the subject properties.

I set this matter for a preliminary scheduling conference on February 5, 2013.  Ms. Miller appeared for that proceeding, but Defendant Bennett was inexplicably absent.  On that same day, this court issued an Order to Defendant to Show Cause (doc. #44) why a default judgment or other sanctions should not be imposed for her failure to comply with a court order, the District Court's Local Rules of Practice, and the Federal Rules of Civil Procedure.  Ms. Bennett filed a Combined Answer to Show Cause Order and Motion to Dismiss for Improper Jurisdiction and Venue (doc. #45) on February 11, 2013, in which she asked "that the Court determine the dual issues of personal jurisdiction and venue prior to requesting that the Defendant travel to Colorado from South Dakota."  On February 26, 2013, this court ordered both *pro se* parties to attend a status conference on March 26, 2013 at 1:30 pm, but permitted Defendant Bennett to appear by telephone in lieu of traveling from South Dakota for what was anticipated to be a brief conference.

Ms. Bennett then filed a Motion to Enter Special Appearance (doc. #47) on March 7, 2013, indicating that she "respectfully declined to appear and respectfully requests that the court rule on all pending motions prior to her making an appearance, either by telephone or in person." I denied that motion, noting that "[u]nder the Federal Rules of Civil Procedure there is no reference to either a general or special appearance."  *See also Jonsson v. National Feeds, Inc.*, 2012 WL 425274, at *1 n.2 (D. Utah Feb. 9, 2012) (citing *Investors Royalty Co. v. Mkt. Trend Survey*, 206 F.2d 108, 111 (10th Cir. 1953) for the proposition that Fed. R. Civ. P. 12(b) "abolishes the distinction between general and special appearances").  During the status

conference on March 26, 2013, the court advised both parties that it would hear argument on Plaintiff's Motion for Default Judgment and Defendant's Combined Motion to Dismiss or Transfer during proceedings on May 9, 2013 at 1:30 pm. The court also made clear that the parties must be physically present at that hearing. *See* Courtroom Minutes/Minute Order (doc. #50).

On April 26, 2013, Defendant Bennett filed a Suggestion of Bankruptcy (doc. #55), advising the court that on April 23, 2013, Ms. Miller had filed a Voluntary Petition for Chapter 13 relief in the United States Bankruptcy Court for the District of Wyoming.[2] *See 4Kids Entertainment, Inc. v. Upper Deck Co.*, 797 F. Supp. 2d 236, 241 (S.D.N.Y. 2011) (noting that the "automatic stay [in bankruptcy] does not extent to claims brought by the debtor[ ] against other parties"). I issued an Order on May 2, 2013 indicating that the court would proceed with the hearing on Plaintiff's Motion for Default Judgment and Defendant's Combined Motion, but that the hearing on May 9, 2013 would commence at 2:30 pm.

Approximately ten minutes before the hearing on May 9, 2013 was scheduled to begin, Ms. Miller contacted the Clerk's Office by telephone, stating that she had experienced car trouble that morning while in Vail, Colorado and would not be attending the hearing in person. Ms. Miller was instructed to call back at 2:30 pm and join the hearing by telephone. Once on the record, Plaintiff explained that since the front tires of her car "got stuck in mud" around 11:00 am that morning, she had "been trying to get someone to help me get the car free," and had not called the court earlier because she "was trying to save my phone battery to get a tow company." *See* Transcript of Proceedings on May 9, 2013 (doc. #77), at 2-3.

---

[2]  In her Petition, Ms. Miller listed her address as 210 N. Clark Street, Hanna, Wyoming.

4

After noting obvious inconsistencies in the exhibits submitted by the parties and Ms.

Miller's claimed difficulties with her cellular telephone, the court suggested that the hearing

could be continued for one day, given that Defendant Bennett had traveled from South Dakota in

compliance with my previous order.  Ms. Miller explained that she would not be available for a

hearing on May 10th, but asked that the court "schedule it again for another hearing."  *Id.* at 19.

At that point Ms. Miller began losing telephone contact with the court.  The following colloquy

ensued.

> MS. MILLER:   Hello?
>
> THE COURT:   Yes.  Miss Miller, I'm glad you're back.
>
> MS. MILLER:   Yes.  It's about to die again because when my battery gets low it keeping dying.
>
> THE COURT:   Okay.  Well, I don't know quite what to say about that Miss Miller, but I can't – I can't, practically speaking, have a hearing where the Bennetts get on the witness stand, they testify for five minutes, and then your phone cuts out.  That's just not an effective way to proceed.  And so right now my inclination would be unless you folks – I mean, defense counsel has said that he – he is willing to have his clients simply submit these issues on the papers, and I can certainly do that, but I'm not sure that's going to be a particularly satisfying approach for anybody.  But if you want to waive your right to oral argument on the two pending motions and if the Bennett wish to waive their right to oral argument on the two pending motions then I will consider them submitted and I will go ahead and – and act upon those submissions.
>
> MS. MILLER:   No.  I mean, I definitely want to cross-examine them and to – and to be there.

*Id.* at 43-44.   After further discussion with the parties, the court re-set the hearing for June 7,

2013.  The court warned Ms. Miller that "if you are not physically present in my courtroom . . .

you risk the possibility that the Court could impose sanctions up to and including dismissal of

your case."  *Id.* at 65.

On the afternoon of June 6, 2013, Ms. Miller filed a Motion to Cancel Hearing/Dismiss Case (doc. #70), in which she suggested that I cancel the evidentiary hearing set for 9:00 am on June 7th because "settlement negotiations are ongoing" and she was attempting to avoid the need for Defendant Bennett to incur additional legal fees.  Presumably, by that point, Ms. Bennett and her husband already were in route from South Dakota.  Defendant's counsel filed a Response to Plaintiff's Motion to Cancel Hearing/Dismiss Case (doc. #72), stating that "[t]he parties have not reached any settlement in this matter" and suggesting that Plaintiff's motion was "designed to further manipulate this Court for no legitimate purpose."  Ms. Bennett asked that the June 7th hearing proceed "in order to put an end to this matter by dismissing the case with prejudice and to enter whatever redress this Court deems appropriate to vindicate the dignity of this Court by Plaintiff's contumacious conduct."  The court denied Plaintiff's motion on June 6, 2013 based upon Ms. Miller's failure to comply with D.C.COLOLCivR 7.1A, which requires a moving party to confer in good faith with opposing parties before filing a motion.

The parties appeared before this court on June 7, 2013.  I began that hearing by announcing the court's intention to "hear whatever evidence [the parties] want to introduce . . . on the two pending motions."  *See* Transcript of Proceedings on June 7, 2013 (doc. #78), at 2. The court then asked Ms. Miller, as "the party moving for default judgment, is there any additional evidence or information you would like me to consider on the question of the default judgment?"  *Id.* at 3.

MS. MILLER:  No, Your Honor.  You've read the file.  And as I am very sick today and I have the flu, I was hoping we could possibly wrap it up by 9:30 . . .

THE COURT:   I fully expect we'll probably be going much closer to noon.

MS. MILLER:   Well, as I am very sick I – I'm probably going to have to leave at

6

9:30.

\* \* \*

THE COURT:   Well ma'am, if you need to take a recess to go to the bathroom I'm happy to let you do that, but we're going forward today.

MS. MILLER:   I'll probably need to take a recess to go to the ER.  Will that be okay?

THE COURT:   Ma'am – ma'am, if you need to go to the ER please let me know. We will call for an ambulance.

\* \* \*

THE COURT:   Ma'am, what is the nature of your medical problem?

MS. MILLER:   I have a very bad case of the stomach flu and I've been throwing up all night.

THE COURT:   Ma'am, [the Bennett] have come all this way.  You filed a motion.  Ma'am, let me explain to you my concern.  You missed the last hearing because you told me that your car was stuck in the mud.  I check the weather in Vail that day and the high temperature that morning was 27 degrees.  I went back and I listened to the tape [of the May 9, 2013 hearing].  On that tape when you called in you were – you said you were in the middle of nowhere.  I listened to the tape yesterday and there are a whole series of conversations going on in the background.  Phones are ringing.  Other conversations are going on.  You told me over the phone that you were literally in the middle of nowhere.

MS. MILLER:   I was.  I have no idea what kind of interference was on the line.

THE COURT:   I don't either.  But, ma'am, what I'm telling you is at some point I have to evaluate credibility. . . .  I have to honestly tell you, Ms. Miller, there seems to be a continuing litany of excuses why this case isn't moving forward and at some point, ma'am, we all run out of excuses and you're pretty much at that point.

MS. MILLER:   Well, since I'm very sick – you don't believe me, I'm requesting that – that I get medical assistance so that you will grant me to leave.  I don't think you can do a diagnosis from up there.

THE COURT:   That's right.  But, ma'am, I'm going forward.  And if you leave voluntarily I'm going to let these people get on the witness stand and testify because you'll be absenting yourself from a hearing that you've already missed once.

7

* * *

>THE COURT:   Ma'am . . . I simply again want you to know that this hearing is going forward.  If the Bennetts get on the witness stand their testimony will be, apparently if you walk out the door, unrebutted and I will accept – I will have to accept their testimony as unrebutted.

>MS. MILLER:   Okay.

*Id.* at 5-6.  After suggesting that the court had little authority because Colorado is "an awfully small state," Ms. Miller wished the court "the best . . . and you have a good one." *Id.* at 19.

Prior to the hearing on June 7, 2013, this court was aware of other litigation commenced by or involving Ms. Miller.[3]  In 2011, Ms. Miller initiated Chapter 13 bankruptcy proceedings in the United States Bankruptcy Court for the District of Colorado.  In that case, Judge Bruce Campbell entered an Order to Show Cause and Notice of Hearing on December 29, 2011 which specifically warned Ms. Miller that if she "fail[ed] to appear and show cause, her case will be dismissed for her failure to appear before the court in proper prosecution of her case."  After Ms. Miller did not appear as required, she was contacted by telephone.  Although the court proceeded with the hearing, Judge Campbell subsequently dismissed Ms. Miller's case, in part, based on her failure to appear.  *See* Defendant's Exhibit K (doc. #74).

On January 27, 2012, Judge Edward C. Moss in the District Court for Adams County, Colorado entered an Order Granting Defendant's Motion for Injunctive Sanctions and Award of Costs and Attorney's Fees in *Miller v. Jeffrey M. Kessler*, Case No. 10 CV 1700, and *Miller v.*

---

[3]This is not my only case involving Ms. Miller.  On May 2, 2013, I recommend that *Miller v. Wells Fargo Home Mortgage*, Civil Action No. 12-cv-03159-MSK-CBS be dismissed without prejudice based on Ms. Miller's failure to appear at a status conference on May 2, 2013 and a status conference set for April 1, 2013.  That recommendation was adopted by the district court on June 5, 2013.

*Jennifer Ann Kelley*, Case No. 10 CV 1702.  Judge Moss' Order noted that Ms. Miller

> has systematically used the Colorado and federal courts, not to vindicate her
> rights, but to harass and intimidate her adversaries by repeatedly filing groundless
> and vexatious claims against them. She has indicated her intention to move from
> the State of Colorado . . . to another state where she can, in her words, "properly
> follow up on lawsuits."

* * * *

> Ms. Miller is a disbarred Virginia attorney who claims to have had a
> romantic relationship with Mr. Kessler, her former law partner, several years ago.
> Since their law practice together ended, Ms. Miller has engaged in a continuous
> campaign to harass and intimidate the Kesslers. . . . Ms. Miller pled guilty to
> disorderly conduct and assault charges stemming from two separate incidents–one
> in May 2009 and one in August 2009. . . . Since then, Ms. Miller has filed five
> civil actions against Jeffrey Kessler, four against Jennifer Kessler, one against
> Donald Kessler (Jeffrey's father), one against Constantine Kessler (Jeffrey's
> mother), six against the Kesslers' various attorneys, and one against Colorado
> District Judge Charles Scott Crabtree.  These suits have been filed in the United
> States District Court for the District of Colorado, the District of Wyoming, and
> the District of Columbia. . . . In addition to her civil and bankruptcy claims, Ms.
> Miller filed three dissolution actions against Mr. Kessler in three different
> Colorado counties, despite, as courts have repeatedly determined, that she was
> never married to him.

*See* Exhibit J (doc. #59-10) attached to Defendant's Hearing Memorandum.  In his Order, Judge

Moss also found that Ms. Miller's lawsuits "have caused a needless expenditure of resources for

both the Kesslers, their attorneys, the Colorado Attorney General's office (who represents Judge

Crabtree), and the judicial system."  *Id.*  After concluding that monetary penalties would be

ineffective to deter Ms. Miller from filing further claims against the Kesslers, Judge Moss

enjoined Ms. Miller "from appearing *pro se* in the courts of the state of Colorado without first

obtaining leave of the court in which she seeks to appear."  *Id.*

On March 6, 2012, the United States District Court for the Western District of Virginia in

*Miller v. Jennifer Ann Kelley*, Civil Action No. 7:10-cv-00546, enjoined Ms. Miller "from filing

9

*pro se* actions in this district against Jennifer Ann Kelley and her family." *See* Exhibit D (doc. #59-4) attached to Defendant's Hearing Memorandum.  On March 31, 2012, in *Miller v. Jeffrey Michael Kessler*, Civil Action No. 11-753 (EGS)(AK), United States District Judge Emmet G. Sullivan noted Ms. Miller's "history of filing vexatious and frivolous actions against [Mr. Kessler] and his family in courts throughout the United States," and barred Ms. Miller from "any future filings in this matter against the defendant, his wife, and other members of his family without the Court's advance permission." *See* Exhibit F (doc. #59-6) attached to Defendant's Hearing Memorandum.

Finally, there is reason to believe Ms. Miller has embarked on a similar campaign of harassment against the Bennetts.  On December 28, 2012, Ms. Miller send an email to the Bennetts' attorney, Rick Cain, in which she alluded to pending litigation in South Dakota and Colorado.

> I will not give up.  If Mr. and Mrs. Bennett die of natural causes before I win, I'll go after their son.  I simply will not give up.  I will stop when I actually get my $35,000 back.  That's when it's over.  I don't care how many times I lose.  If I lose in America, I'll go to Canada and Argentina simultaneously.

*See* Exhibit 5 attached to the Affidavit of Rick A. Cain (doc. #58-1, at page 51 of 51).  Between May 21 and May 28, 2013, Ms. Miller forwarded 48 email messages, many consisting of junk email or spam, to the Bennetts' lawyer in Colorado solely to harass counsel and increase the Bennetts' litigation costs.  For example, at 12:53 am on May 23, 2013, Ms. Miller emailed counsel with the explanation: "Just woke up I can't sleep.  I just thought if Tamra Bennett had to pay you $125 for reading this email that might help.  We will see.  Goodnight." *See* Exhibit A attached to Defendant's Second Supplemental Hearing Memorandum (doc. #69).

I further note that on February 13, 2013, during the pendency of the instant action, Ms.

10

Miller filed an Involuntary Petition against Tamra Bennett in the United States Bankruptcy Court for the District of South Dakota.  That Petition was dismissed by the Bankruptcy Court on February 26, 2013 upon a finding that "the petitioning creditor [Ms. Miller] has failed to comply with the Order denying Application for Waiver of Filing Fee and Setting Certain Deadline . . . and for cause shown."  *See* Exhibits B and C attached to Defendant's Third Motion to Supplement Combined Motion to Dismiss or Transfer (doc. #74).  As a result of this involuntary bankruptcy petition, Ms. Bennett's credit cards were cancelled and had to be re-established.  *See* Transcript of Proceedings on June 7, 2013 (doc. #78), at 41.

## ANALYSIS

I.      *Plaintiff's Motion for Default Judgment*

On December 28, 2012, Plaintiff Miller filed an Amended Motion for the Clerk to Enter Defendant's Default and Enter a Default Judgment (doc. #32), based on Ms. Bennett's failure "to plead or otherwise defend."  The Clerk of Court entered a default (doc. #33), pursuant to Fed. R. Civ. P. 55(a), on December 28, 2012.  Ms. Miller moved under Fed. R. Civ. P. 55(b)(1) for entry of default judgment on January 2, 2013.  Five days later, on January 7, 2013, then *pro se* Defendant Bennett filed her Combined Motion to Dismiss or Transfer (doc. #37), arguing that dismissal of this action was required "because the court does not have personal jurisdiction over Bennett" as Defendant "is not and has never been a resident of Colorado, has no connections to this state, and her signing a contract with the Plaintiff in California does not constitute the 'minimum contacts' with the State of Colorado required to support personal jurisdiction."  In the same motion, Ms. Bennett argued that Plaintiff "is attempting to get fraudulent default judgments by fictitious service."

From a procedural perspective, Ms. Bennett's Combined Motion should have been accompanied by a motion to set aside the Clerk's entry of default. *But see Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 386 (7th Cir. 2008) ("Without deciding whether a district court could set aside a default judgment *sua sponte*, we believe that the district court had the authority to set aside *sua sponte* an entry of default against [defendant] for good cause."); *Miller v. Madison*, 2013 WL 2181240, at *2 (N.D.N.Y. May 20, 2013) ("Because Rule 55(c) does not refer to a motion requirement, a court may set aside an entry of default *sua sponte*.").  This court, however, will treat Ms. Bennett's Combined Motion as subsuming a request to set aside the default entered by the Clerk of Court. *Cf. Vick v. Wong*, 263 F.R.D. 325, 328 (E.D. Va. 2009) (where the defendant submitted an affidavit disputing several of the plaintiff's claims and also asked that her affidavit be considered an opposition to the motion for entry of default judgment, the court elected to treat the defendant's affidavit as a motion to set aside default).  *See also Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981) ("Even if a default had been entered, opposition to a motion for a default judgment can be treated as a motion to set aside the entry of a default despite the absence of a formal Rule 55(c) motion."); *Applied Capital, Inc. v. Gibson*, 2007 WL 5685131, at *1-2 (D.N.M. Sept. 27, 2007) (where the *pro se* defendant filed a motion to dismiss without first filing a motion to set aside the entry of default, the court elected to construe the defendant's motion to dismiss "liberally as a motion to set aside the default"); *Owens v. Republic of Sudan*, 374 F. Supp. 2d 1, 9 (D.D.C. 2005) (noting that "[c]ourts routinely allow defendants to file a motion to dismiss in place of an answer despite a prior entry of default").

"[A] default judgment in a civil case is void if there is no personal jurisdiction over the

defendant," *United States v. Bigford*, 365 F.3d 859, 865 (10th Cir. 2004), and service of process is the manner by which the court asserts jurisdiction over the person of the defendant. *Cf. OS Recovery, Inv. v. One Groupe International, Inc.*, 2005 WL 1744986, at *1 (S.D.N.Y. July 26, 2005) ("It is axiomatic, of course, that '[a] court may not properly enter a default judgment unless it has jurisdiction over the person against whom the judgment is sought, which also means that [the defendant] must have been effectively served with process.'"). The Proof of Service (doc. #18) filed by Ms. Miller on December 12, 2012, indicates that "Michael Black," whose reported address is "210 n. clark street, hanna, wyoming," effected personal service on Tamra Bennett at "4304 Fourth Ave. Selby, SD, 57472"[4] on November 16, 2012, and received a fee of $50 for travel and $50 for service. In response to Ms. Miller's Amended Motion for entry of default, on December 26, 2012, Mr. Bennett wrote to the Clerk of the Court on behalf of his wife stating

> I have never been served with any documents in this case, including the original complaint. After I sent a letter to you a couple of months ago, Ms. Miller filed the enclosed "Proof of Service" which is a lie. The document purports to evidence Proof of Service and is signed by a "Michael Black" from Wyoming who did NOT ever serve me with anything.

*See* Doc. #23.

---

[4]This court will take judicial notice of the fact that the Circuit Court in Walworth County, South Dakota is located at 4304 Fourth Avenue, Selby, South Dakota. *See* Fed. R. Evid. 201(b) (holding that the court "may judicially notice a fact . . . that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"). The Bennetts' attorney in South Dakota insists that he was present with Tamra Bennett on November 16, 2012 in Selby, South Dakota in connection with court proceedings in a foreclosure action commenced against Ms. Miller. According to Mr. Cain, "[a]t no time while Tamra Bennett was in my presence was Tamra Bennett served by anyone with any pleadings pertaining to this Civil Action." *See* Affidavit of Rick A. Cain (doc. #58-1), attached to Defendant's Motion to Supplement Combined Motion to Dismiss or Transfer.

The circumstances surrounding the purported service of the summons and complaint in this case are uncertain at best.  "A proof of service is a sworn declaration giving rise to a presumption of receipt, but, depending on the circumstances, that presumption can be rebutted by a credible sworn declaration of non-receipt." *Seminiano v. Xyris Enterprise, Inc.*, 512 Fed. Appx. 735, 736 (9th Cir. 2013).  During the hearing on May 9, 2013, Ms. Miller acknowledged that she prepared the Proof of Service for Mr. Black's signature and that she actually drove Mr. Black to and from South Dakota.[5]  *See* Transcript of Proceedings on May 9, 2013 (doc. #77), at 11 and 12.

Defendant Bennett disputes the veracity of the Proof of Service prepared by Ms. Miller and purportedly signed by Mr. Black.  In support of her challenge, Ms. Bennett has tendered an Affidavit of Service filed in *Jack Gould v. Tamra Bennett*, Case Number 13 CV 1318, an action initiated in the District Court for the City and County of Denver, Colorado.  *See* Exhibit A (doc. #67-1) attached to Defendant's First Supplemental Hearing Memorandum.  That Affidavit of Service was notarized by Ann Marie Miller and allegedly signed by "Michael Black" as the private process server in that case.  An even rudimentary comparison reveals no similarities between the two signatures that Ms. Miller attributes to "Michael Black."  *Cf. United States v. Saadey*, 393 F.3d 669, 679 (6th Cir. 2005) (noting that under Fed. R. Evid. 901(b)(3), a lay person can identify and compare signatures).  Ms. Miller has never provided an affidavit from

_____

[5]A search on Mapquest.com reveals that a roundtrip by automobile from Hanna, Wyoming to Selby, South Dakota would cover 1177.87 miles and require nearly 20 hours to complete.  *See Carson v. Adams*, 2013 WL 169845, at *2 n.3 (C.D. Cal. Jan. 14, 2013) ("Courts have generally taken judicial notice of facts gleaned from internet mapping tools such as Google Maps or Mapquest.").  *Cf.  Citizens for Peace in Space v. City of Colorado Springs*, 477 F.3d 1212, 1219 n.2 (10th Cir. 2007) (taking judicial notice of a distance between two geographical points based on a website).

14

"Michael Black" or any other independent evidence that would substantiate his role in serving

Ms. Bennett in this or any other case.

Yet, without proper service on Ms. Bennett, a default judgment cannot be entered. *See*

*Williams v. Bureau of Land Management*, 2008 WL 821897, at *1 (D. Colo. Mar. 24, 2008),

citing *Cunningham v. Ridge*, 2007 WL 4291045, at *3 (10th Cir. Dec. 7, 2007). *Cf. Enron Oil*

*Corp. v. Diakuhara*, 10 F.3d 90, 98 (2d Cir. 1993) (concluding that a default judgment should

not be entered where the defendant disputed proper service as "all doubts must be resolved in

favor of trial on the merits").

Even assuming that Ms. Miller affected proper service of the summons and complaint,

Rule 55(c) provides that "for good cause shown the court may set aside an entry of default." *See*

Fed. R. Civ. P. 55(c). The grounds for setting aside a default are well-established in the Tenth

Circuit. *See, e.g., Hunt v. Ford Motor Company*, 65 F.3d 178 (10th Cir. 1995); *Fink v.*

*Swisshelm*, 185 F.R.D. 353 (D. Kan. 1999).

> The principal factors in determining whether defendant has shown good cause to
> set aside an entry of default include (1) whether the default resulted from culpable
> conduct by defendant, (2) whether plaintiff would be prejudiced if the Court set
> aside the default and (3) whether defendant has presented a meritorious defense.

*Crutcher v. Coleman*, 205 F.R.D. 581, 584 (D. Kan. 2001). The Tenth Circuit also has

recognized that motions under Rule 55(c) are reserved for the sound discretion of the trial court

and judges "are given 'a great deal of latitude' in exercising their discretion as to whether the

movant carried his burden of proving that the default . . . [was] entered erroneously." *Nikwei v.*

*Ross School of Aviation, Inc.*, 822 F.2d 939, 941 (10th Cir. 1987). As a general rule, cases should

be decided on their merits and, for that reason, default judgments are generally disfavored. *See*

*Creative Tile Marketing, Inc. v. SICIS Intern.*, 922 F. Supp. 1534, 1536 (S.D. Fla. 1996);

15

*Universal Am-Can, Ltd. v. Interstate Brands Corp.*, 160 F.R.D. 151, 152 (D. Kan. 1995).

In this case, I find that good cause exists for setting aside the default.  There has been no showing that Ms. Miller will be prejudiced if the default is set aside.  *Cf. Lacy v. Sitel Corp.*, 227 F.3d 290, 293 (5th Cir. 2000) (finding no prejudice where setting aside entry of default merely required plaintiff to prove its case); *Adams v. Connelly*, 2012 WL 2055043, at *3 (D. Utah June 6, 2012) (finding that "[s]etting aside the defaults and making Plaintiffs litigate their claim on the merits will not cause Plaintiffs prejudice").  *See also Nationwide Mutual Ins. Co. v. Starlight Ballroom Dance Club, Inc.*, 175 Fed. Appx. 519, 522-24 (3rd Cir. 2006) ("Prejudice is established . . . when a plaintiff's 'ability to pursue the claim has been hindered . . . [by, for example,] loss of available evidence, increased potential for fraud or collusion, or substantial reliance upon the judgment;'" the non-moving party must show more than simply "[d]elay in realizing satisfaction on a claim").

Defendant Bennett also asserts that she has meritorious defenses in this action, including lack of personal jurisdiction and improper venue.  *See, e.g., Coon v. Grenier*, 867 F.2d 73, 77 (1st Cir. 1989) (holding that for purposes of Rule 55(c), a "meritorious defense" does not require the movant to show substantial likelihood of success on the merits); *Sharp v. Maricopa County*, 2009 WL 4826995, at *1 (D. Ariz. Dec. 15, 2009) ("Where timely relief is sought from a default . . . and the movant has a meritorious defense, doubt, if any, should be resolved in favor of the motion to set aside the default so that cases can be decided on their merits.") (quoting *Mendoza v. Wight Vineyard Management*, 783 F.2d 941, 945-46 (9th Cir. 1986)).  *Cf. Williams v. Life Savings & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986) ("when entry of a default judgment is sought against a party who has failed to plead or otherwise defend, the district court has an

16

affirmative duty to look into its jurisdiction both over the subject matter and the parties").

Finally, I do not find that Ms. Bennett's default resulted from culpable conduct.  A party's conduct is considered culpable if it defaulted willfully or has no excuse for the default. *United States v. Timbers Preserve*, 999 F.2d 452, 454 (10th Cir. 1993).  Here, the record does not reveal an inattentive defendant.  Ms. Miller filed her Second Amended Complaint on August 23, 2012, but purportedly did not serve Ms. Bennett until November 16, 2012.  *See* Doc. #18.  On September 17, 2012, Defendant Bennett's husband wrote to this court, stating that while conducting an internet search "for 'Ann Marie Miller,'" he happened upon a document indicating that the instant case had been drawn to a district judge and magistrate judge.  *See* Doc. #15.  In the same letter, Mr. Bennett stated that he and his wife "have never been served with anything about this case and would welcome being able to view any associated documents."  *Id.*

On December 26, 2012, Ms. Miller filed an Amended Motion for the Clerk to Enter Defendant's Default and Enter a Default Judgment (doc. #24).  On the same day, Mr. Bennett again wrote to the Clerk of the Court on behalf of his wife.  In this letter, Mr. Bennett advised that

> I have never been served with any documents in this case, including the original complaint.  After I sent a letter to you a couple of months ago, Ms. Miller filed the enclosed "Proof of Service" which is a lie.

*See* Doc. #23.  This court received another letter (doc. #31) from Mr. Bennett on December 28, 2012.  In this letter, Mr. Bennett advised that he was "answering a lawsuit I have never seen," and that "Defendant hereby denies each and every allegation contained within the original Complaint and puts Plaintiff to its strictest proof in every instance."  Mr. Bennett stated that his wife was raising "lack of jurisdiction and improper venue," as well as challenging Plaintiff's

alleged service of process.

While Defendant may have incorrectly believed that her husband's communications with the court would suffice to meet her *pro se* obligations under Fed. R. Civ. P. 12, Mr. Bennett's letter dispels any notion that Defendant was being evasive or willful by not promptly answering or otherwise responding to the Second Amended Complaint. *Cf. United States v. Gant*, 268 F. Supp. 2d 29, 32 (D.D.C. 2003) (suggesting that "default judgment usually is available 'only when the adversary process has been halted because of an essentially unresponsive party'"). *See also TCI Group Life Insurance Plan v. Knoebber*, 244 F.3d 691, 697-98 (9th Cir. 2000) ("Negligent failure to answer as to which the defendant offers a credible, good faith explanation negating any intention to take advantage of the opposing party, interfere with judicial decision-making, or otherwise manipulate the legal process is not 'intentional' . . ., and is therefore not necessarily . . . culpable or inexcusable."). I am also mindful that Ms. Bennett remained unrepresented in this action until May 3, 2013. *Cf. United States v. Signed Personal Check No. 730*, 615 F.3d 1085, 1089 (9th Cir. 2010) (noting that the "rules for determining when a default should be set aside are solicitous towards movants, especially those whose actions leading to the default were taken without the benefit of legal representation."). Given the absence of willful conduct and Mr. Bennett's prompt, albeit ineffectual actions, there appears to be good cause to set aside the default. *Cf. Weiss v. St. Paul Fire and Marine Insurance Co.*, 283 F.3d 790, 794-95 (6th Cir. 2002) (vacating default judgment where failure to file timely answer resulted from counsel's honest mistake)*; Ledbetter v. Kansas Dep't Soc. & Rehab. Servs.,* 2000 WL 206208, at *1 (D. Kan. Jan. 3, 2000) (good faith mistaken belief regarding procedural questions not culpable conduct).

Accordingly, Plaintiff's Motion for Default Judgment is denied and the default entered against Defendant Bennett on December 28, 2013 is hereby set aside.[6]

II.    *Defendant's Combined Motion to Dismiss or Transfer*

Defendant Bennett has moved to dismiss the Second Amended Complaint (doc. #8) for lack of personal jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(2).  In sum, Ms. Bennett argues that she has no connection to Colorado, and certainly no ties to this forum that would establish "minimum contacts" sufficient to satisfy the Due Process Clause.  In the alternative, Defendant contends the action should be transferred to the District of South Dakota.  Plaintiff Miller's response to Defendant's Combined Motion argues that "venue is proper due to" a forum selection clause that Ms. Miller insists is contained in the contract executed by the parties, and that the parties' "negotiations were enough of a contact to give rise to specific jurisdiction."

In every action, the plaintiff bears the burden of establishing personal jurisdiction over a non-resident defendant.  *See Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).  A plaintiff establishes personal jurisdiction over non-resident defendants in a diversity action by demonstrating that "jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the [D]ue [P]rocess [C]lause of the Fourteenth Amendment."  *Benton v. Cameco Corp.*, 375 F.3d 1070, 1075 (10th Cir. 2004), quoting *Soma Medical Intern. v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999).  "The Due

---

[6]*See J & J Sports Productions, Inc. v. Martinez*, 2013 WL 2147790, at *1 n.2 (M.D.N.C. May 16, 2013) (concluding that the decision to set aside an entry of default "constitutes a pretrial matter that does not dispose of any claim or defense; as a result courts have treated motions of this sort as subject to disposition by a magistrate judge under 28 U.S.C. § 636(b)(1)(A)").

Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-472 (1985), quoting *International Shoe Co. v. State of Washington.*, 326 U.S. 310, 319 (1945).   Because Colorado's long-arm statute extends as far as the constitutional limits of the Due Process Clause, the court's jurisdiction over non-resident defendants is coextensive with the Due Process Clause.   *Benton*, 375 F.3d at 1075; *Keefe v. Kirschenbaum & Kirschenbaum, P.C.*, 40 P.3d 1267, 1270 (Colo. 2002).   For purposes of this case, the pertinent provision in Colorado's long-arm statute confers jurisdiction over "any cause of action arising from…[t]he transaction of any business within th[e] state."   Colo. Rev. Stat. § 13-1-124(1)(a).   Personal jurisdiction may be either general or specific.

When the issue of personal jurisdiction is raised before trial and decided on the basis of affidavits and other written materials, a plaintiff need only make a prima facie showing.   *Wise v. Lindamood,* 89 F. Supp.2d 1187, 1189 (D. Colo. 1999).   All disputed facts and all reasonable inferences must be drawn in the plaintiff's favor.   *Behagen v. Amateur Basketball Ass'n of U.S.A.*, 744 F.2d 731, 733 (10th Cir. 1984).   "However, 'only the well pled facts of plaintiff's complaint, as distinguished from mere conclusory allegations, must be accepted as true."   *Wise*, 89 F. Supp.2d at 1189.   The court also should accept as true those facts presented in defendant's affidavits that remain unrefuted by plaintiff.   *See Glass v. Kemper Corp.*, 930 F. Supp. 332, 337 (N.D. Ill. 1996).

The plaintiff's burden is heavier in those cases where the court conducts an evidentiary hearing.   *Buckles v. Brides Club, Inc.*, 2010 WL 3190751, at *4 (D. Utah 2010). "[W]hen the district court holds a pretrial evidentiary hearing to resolve factual disputes relating to

jurisdictional questions, the plaintiff has the burden to prove facts supporting jurisdiction by a preponderance of the evidence." *Federal Deposit Insurance Corp. v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir. 1992). *Cf. Kwik-Kopy Corp. v. Byers*, 37 Fed. Appx. 90, at *3 (5th Cir. 2002) ("[W]ith regard to the plaintiff's burden of proof responding to a motion to dismiss for lack of jurisdiction, '[e]ventually . . . the plaintiff must establish jurisdiction by a preponderance of the evidence either at a pretrial evidentiary hearing or at trial.'"), quoting *Travelers Indemnity Co. v. Calvert Fire Insurance Co.*, 798 F.2d 826 (5th Cir. 1986). If the issue of personal jurisdiction is the subject of an evidentiary hearing, "the court determines the credibility of witness testimony, weighs the evidence, and finds the relevant jurisdictional facts." *PVC Windoors, Inc. v. Babbitbay Beach Construction, N.V.*, 598 F.3d 802, 810 (11th Cir. 2010).

A.      Factual Findings

Based upon a review of the parties' exhibits and affidavits, as well as the testimony provided by Mr. Bennett on June 7, 2013, the court finds that the following facts have been established by a preponderance of the evidence.

Tamra Bennett is a long-time resident of South Dakota and has never lived in Colorado. Ms. Bennett does not own any real property in Colorado, and has never operated or conducted a business in Colorado. *See* Affidavit of Tamra Bennett (doc. #58-2), attached to Defendant's Motion to Supplement Combined Motion to Dismiss or Transfer. Although Ms. Miller may have been a Colorado resident at the time she initiated this litigation, she no longer lives in this forum. *See* Transcript of Proceedings on June 7, 2013 (doc. #78), at 10. The eight rental properties which are the subject of Ms. Miller's claims for relief are located in the town of Mobridge, in Walworth County, South Dakota. *See* Deed of Contract identified as Exhibit A to

the Supplemental Affidavit of Rick A. Cain (doc. #66-1, at pages 4 and 10 of 19), attached to

Defendant's Second Motion to Supplement Combined Motion to Dismiss or Transfer. *See also*

Affidavit of Tamra Bennett (doc. #58-2), attached as Exhibit B to Defendant's Motion to

Supplement Combined Motion to Dismiss or Transfer.

Ms. Bennett and her husband Tom advertised their Mobridge rental properties for sale on

eBay[7] in late January 2012. *See* Affidavit of Tamra Bennett (doc. #58-2), and Affidavit of Tom

Bennett (doc. #58-3), attached as Exhibit C to Defendant's Motion to Supplement Combined

Motion to Dismiss or Transfer. *See also* Transcript of Proceedings on June 7, 2013 (doc. #78),

at 34. On or about February 1, 2012, while the Bennetts were visiting their son in Carlsbad,

California, they received a telephone call from Ms. Miller expressing an interest in purchasing

the Mobridge properties with a down payment of $25,000. *See* Affidavits of Tamra Bennett

(doc. #58-2) and Tom Bennett (doc. 58-3). *See also* Transcript of Proceedings on June 7, 2013

(doc. #78), at 35. Ms. Miller had learned about the Mobridge properties from the Bennetts' eBay

listing. *See* Transcript of Proceedings on May 9, 2013 (doc. #77), at 13. The Bennetts insist

they had no contact with Ms. Miller prior to receiving her telephone call during their visit to

Carlsbad. *See* Transcript of Proceedings on June 7, 2013 (doc. #78), at 342. When the Bennetts

indicated their willingness to accept the $25,000 down payment, Ms. Miller said that she would

drive from Sacramento to Carlsbad to complete the transaction. *See* Affidavit of Tom Bennett

(doc. #58-3). *See also* Transcript of Proceedings on June 7, 2013 (doc. #78), at 32. The

Bennetts then instructed their lawyer to prepare a Contract for Deed which Mr. Cain sent, along

---

[7]*See eBay Inc. v. MercExchange LLC,* 547 U.S. 388, 390 (2006) ("[E]Bay operates a popular Internet Web site that allows private sellers to list goods they want to sell, either through an auction or at a fixed price.").

with a Short Form Contract for Deed, by email to the Bennetts in Carlsbad.  *See* Supplemental

Affidavit of Rick A. Cain (doc. #11-1).  *See also* Transcript of Proceedings on June 7, 2013 (doc.

#78), at 32.  The Contract for Deed called for a non-refundable down payment of $25,000, with

the balance of the purchase price, $225,000, to be paid in "120 equal amortized monthly

principle installments of $2500.00, each including interest."  *See* Contract for Deed identified as

Exhibit A to the Supplemental Affidavit of Rick A. Cain (doc. #66-1, at pages 4 of 19).  These

payments were to be sent to the Bennetts in South Dakota.  *See* Transcript of Proceedings on

June 7, 2013 (doc. #78), at 36.

During the hearing on June 7, 2013, Mr. Bennett described the ensuing transaction

between the parties.

> THE WITNESS [Tom Bennett]:   . . . Ms. Miller arrived [in Carlsbad].
> We went to a restaurant around the corner from where we were staying and she
> looked over the contract and said okay, this looks good to me.  Then we went –
> we stopped and picked up Tamra, my son and I . . . .  The four of us rode to the
> UPS store where we signed the agreements.
>
> THE COURT:   Now, at the time – at what point in this process . . . you
> said you went to the UPS store and everybody signed or Miss Bennett signed and
> Ms. Miller signed the originals.  Were copies of those originals made at the UPS
> store or were they made someplace else?
>
> THE WITNESS:   We made them at the UPS store, . . . one copy of each,
> gave one copy of each to Miss Miller.

*Id.* at 35.[8]  Jennifer L. Tritt, the California notary who witnessed the execution of the documents

---

[8]In her Second Amended Complaint, Ms. Miller alleges that her negotiations with the
Bennetts "took place in Colorado."  However, the exhibits proffered by Ms. Miller to "establish
liability" (*see* doc. #53) do not reflect any communications between Ms. Miller and the Bennetts
prior to February 2, 2012, and certainly do not evidence "negotiations" in Colorado that
preceded the parties' meeting in Carlsbad, California on February 2, 2012.  Ms. Miller has not
presented email communications, telephone records, or any other documentation that would
corroborate her self-serving allegation, and she bears the burden of persuasion.

on February 2, 2013, has confirmed that the Contract for Deed attached to Mr. Cain's Supplemental Affidavit is a true copy of the document she actually notarized. *See* Affidavit of Jennifer L. Tritt (doc. #66-2), attached to Defendant's Second Motion to Supplement Combined Motion to Dismiss or Transfer.

After February 2, 2012, Ms. Miller sent three installment payments to the Bennetts in South Dakota. *See* Transcript of Proceedings on June 7, 2013 (doc. #78), at 36. On August 1, 2012, Mr. Cain filed a foreclosure action in Walworth County, South Dakota on behalf of Tamra and Tom Bennett (hereinafter "the Foreclosure Action"), in the wake of Ms. Miller's alleged failure to honor her obligations under the Contract for Deed executed on February 2, 2012. *See* Affidavit of Rick A. Cain (doc. #58-1), attached to Defendant's Motion to Supplement Combined Motion to Dismiss or Transfer. Ms. Miller filed an Answer in the Foreclosure Action on or about August 15, 2012, along with a counterclaim seeking a refund of $35,000, together with "punitive damages for fraud and bad faith" and a judicial declaration confirming her right to possess the Mobridge properties. *See* Exhibit 4 attached to the Affidavit of Rick A. Cain (doc. #58-1, at pages 32-35 of 51). According to Mr. Cain,

> There have been several hearings in the Foreclosure Action, including trial on the merits of the case which, due to time constraints, had been continued to May 3, 2013. Ann Miller has attended these hearings and has defended her position pertaining to the Foreclosure Action and has asserted her position pertaining to her Counterclaims. The trial date is now subject to the automatic stay due to the recent Bankruptcy Filing of Ann Miller in Wyoming.

*See* Affidavit of Rick A. Cain (doc. #58-1).

B.      General Jurisdiction

General jurisdiction is based upon a defendant's "continuous and systematic" contacts with the forum state, and there is no requirement that the claim at issue be related to those

contacts.  *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011), quoting *Dudnikov v. Chalk & Vermillion Fines Arts, Inc.,* 514 F.3d 1063, 1078 (10th Cir. 2008).  *See also Keefe v. Kirschenbaum & Kirschenbaum, P.C.*, 40 P.3d at 1271.  The plaintiff must establish a "substantial connection" with the forum state, *Asahi Metal Indus. Co., Ltd. v. Superior Court*, 480 U.S. 102, 109 (1987), through which "the defendant purposefully avails itself of the privilege of conducting activities within the forum State." *Burger King Corp.*, 471 U.S. at 475, quoting *Hanson v. Denckla,* 357 U.S. 235, 253 (1958).  Activities that can be characterized as random, attenuated, or fortuitous, are insufficient to establish general jurisdiction.  *Burger King Corp.*, 471 U.S. at 475.  A single contract between a resident of the forum state and an out-of-state party, standing alone, is insufficient to establish general jurisdiction. *See Security Service Credit Union v. First American Mortgage Funding*, 2010 WL 1268062, at *3 (D. Colo. March 29, 2010) ("Entering one contract with a Colorado entity that required payments in Colorado simply fails to rise to the level of systematic and continuous contacts required to confer general jurisdiction.") (citing *Trierweiler v. Croxton and Trench Holding* Corp., 90 F.3d 1523, 1543 (10th Cir. 1996)).  Similarly, isolated or sporadic contacts with the forum state, or mere correspondence with a resident of the forum state are insufficient grounds for establishing general jurisdiction over a defendant.  *Shrader*, 633 F.3d at 1247.

In this case, the Second Amended Complaint does not allege any facts that would demonstrate continuous and systematic activity by Defendant in Colorado.  Ms. Bennett insists that she is a resident of South Dakota and has never lived or worked in Colorado, has never owned real property in Colorado, and has never operated or conducted any business in Colorado.  Ms. Miller has not offered any competent evidence that refutes these assertions.  *See OMI*

*Holdings, Inc. v. Royal Insurance Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998) (once personal jurisdiction is challenged, plaintiff may sustain her burden of proof by presenting facts via affidavits or other written materials); *TJS Brokerage & Co., Inc. v. Mahoney*, 940 F. Supp. 784, 787 (E.D. Pa. 1996) (once personal jurisdiction has been challenged, plaintiff's jurisdictional allegations must be supported with appropriate affidavits or documents). If the court has personal jurisdiction over Ms. Bennett, it must be based on specific jurisdiction.

C.    <u>Specific Jurisdiction</u>

As an alternative basis for personal jurisdiction, specific jurisdiction is predicated upon a defendant's minimum contacts with the forum that give rise to the cause of action. *Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 455 (10th Cir. 1996). Whether a defendant has sufficient minimum contacts with a forum to support specific jurisdiction is determined by a two-step inquiry. *TH Agric. & Nutrition, LLC v. Ace European Group Ltd.*, 488 F.3d 1282, 1287 (10th Cir. 2007). The first step asks whether the "plaintiff [has] shown that the defendant has sufficient minimum contacts with the forum state." *Monge v. RG Petro-Machinery (Group) Co., Ltd.*, 701 F.3d 598, 613 (10th Cir. 2012). The second step asks whether the maintenance of a suit against the defendant under the Due Process Clause "offend[s] 'traditional notions of fair play and substantial justice.'" *World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980), quoting *International Shoe Co.*, 326 U.S. at 316. Any exercise of specific jurisdiction must be reasonable in light of the circumstances surrounding the case. *OMI Holdings, Inc.*, 149 F.3d at 1091, citing *Asahi Metal Indus. Co., Ltd.*, 480 U.S. at 113.

In a contract case, the minimum-contacts standard turns on whether the defendant "'purposefully availed' itself of the privilege of conducting activities or consummating a

transaction in the forum state." *Dudnikov*, 514 F.3d at 1071.  The "purposeful availment" requirement ensures "that a defendant will not be subject to the laws of a jurisdiction solely as the result of random, fortuitous, or attenuated contacts, or of the unilateral activity or another party or a third person." *Employers Mutual Casualty Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1160 (10th Cir. 2010), quoting *AST Sports Sci. Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1058 (10th Cir. 2008).

> [T]he existence of a contract with a forum resident alone is insufficient to establish minimum contacts.  As the Supreme Court has instructed, the existence of a contract indicates other dealings – "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing – that must be evaluated in determining whether the defendant purposely established minimum contacts within the forum."  Thus, these negotiations and activities surrounding the contracts must constitute minimum contacts with the forum state in order for the Court to exercise specific jurisdiction.

*MemoryTen, Inc. v. LV Administrative Services, Inc.*, 2013 WL 1828305, at *4 (D. Colo. April 30, 2013) (internal citations omitted).  *Cf. Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S., 408, 416 (1984) (holding that contract negotiations did not establish contacts with the forum state significant enough to establish specific jurisdiction).  *See also Ruggieri v. General Well Service, Inc.*, 535 F. Supp. 525, 532 (D. Colo. 1982) (the mere existence of a contract executed by a resident of the forum state is insufficient to confer personal jurisdiction over an absent non-resident defendant).

There is no evidence in the record to suggest that Ms. Bennett targeted her eBay listing at Colorado residents or that Defendant specifically sought buyers in Colorado.  *Cf. Machulsky v. Hall*, 210 F. Supp. 2d 531, 541-42 (D. N.J. 2002)( holding that a non-resident defendant's single eBay purchase was not sufficient to demonstrate "purposeful availment of doing business" in the

forum state, even when coupled with minimal correspondence via email with the seller following the eBay transaction). *See also Boschetto v. Hansing*, 539 F.3d 1011, 1019 (9th Cir. 2008) (holding that consummation of a sale via eBay did not suffice to establish specific jurisdiction; the one-time transaction involved the forum state "only because that is where the purchaser happened to reside, but otherwise created no 'substantial connection' or ongoing obligations there"). There is no credible evidence in the record to suggest that Defendant Bennett "purposely availed" herself of the privilege of transacting business in Colorado.

Even if the court were to conclude that Ms. Bennett has sufficient minimum contacts to satisfy Colorado's long-arm statute, the court also must find that the exercise of personal jurisdiction over the non-resident defendant would not offend "traditional notions of fair play and substantial justice." *Trierweiler v. Croxton and Trench Holding Corp.*, 90 F.3d 1523, 1533 (10th Cir. 1996). The court's due process analysis turns on various factors, such as the burden on the defendant, the forum state's interest in resolving the dispute, the plaintiff's interest in receiving convenient and effective relief, and the judicial system's interest in obtaining the most efficient resolution of the controversy. *OMI Holdings, Inc.*, 149 F.3d at 1095.

> In assessing the reasonableness of jurisdiction, we also take into account the strength of a defendant's minimum contacts. [T]he reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on minimum contacts, the less a defendant need show in terms of unreasonableness to defeat jurisdiction.

*Employers Mutual Casualty Co.*, 616 F.3d at 1161-62 (internal citations omitted). The Supreme Court has cautioned that "jurisdictional rules may not be employed in such a way as to make litigation 'so gravely difficult and inconvenient' that a party unfairly is at a 'severe disadvantage' in comparison to his opponent." *Burger King Corp.*, 471 U.S. at 478.

Here, it appears that Colorado has no interest or stake in this action, particularly in light of the fact that Plaintiff is no longer living in the forum state.  There is no reason to believe that Ms. Miller cannot get convenient and effective relief in the courts of South Dakota, particularly given the counterclaim she asserted in the Foreclosure Action initiated in Walworth County by Ms. Bennett on August 1, 2012.  It is not unreasonable to assume that counterclaim and the related Foreclosure Action would have been resolved by this time, but for the bankruptcy proceeding initiated by Ms. Miller in Wyoming.  Indeed, it would appear that Ms. Miller has intentionally adopted a strategy of piecemeal litigation by asserting related claims in Walworth County, South Dakota and the District of Colorado, was well as bankruptcy proceedings in South Dakota and Wyoming.  Exercising personal jurisdiction over Ms. Bennett in the District of Colorado would only to reward Ms. Miller for actions that are at best inefficient, and at worst malicious.

Ms. Miller argues in response that the court may assert specific jurisdiction over Defendant Bennett based upon a choice of forum provision found in Ms. Miller's version of the Contract for Deed.  *See* Exhibit 7 (doc. #53-7) included in Plaintiff's Exhibits, filed on April 4, 2013.  Plaintiff's Contract for Deed includes hand-written marginalia stating, in part:

> Choice of Law & Venue - It is understood that buyer(s) are in Colorado & this is only to be entered in Colorado.  Part of this contract is that venue is agreed to be Denver and [illegible] it wouldn't be entered into.

*Id.  See also* Exhibit 4 to the Affidavit of Rick A. Cain (doc. # 58-1, page 41 of 51).  I recognize that a freely negotiated and enforceable choice of forum provision may be sufficient to satisfy the due process standard.  *See, e.g., Inter-City Products Corp. v. Willey*, 149 F.R.D. 563, 572-73 (M.D. Tenn. 1993) (in light of choice of forum provision, defendants could have reasonably

anticipated being haled into a Tennessee court if litigation arose); *Merrill Lynch Pierce Fenner & Smith, Inc. v. Shaddock*, 822 F. Supp. 125, 128 (S.D.N.Y. 1993) (agreement to resolve dispute in particular forum held to constitute consent to personal jurisdiction in courts of that forum). *See also MemoryTen, Inc.*, 2013 WL 1828305, at *8 (noting Supreme Court decisions recognizing that "'parties to a contract may agree in advance to submit to the jurisdiction of a given court' through a contractual forum selection provision"). However, I find Ms. Miller's version of the Contract for Deed to be implausible and wholly unreliable.

According to Plaintiff, after the parties signed the Contract for Deed on February 2, 2012, Tamra Bennett

> grabbed my original from me and said I didn't need it. I tried to get it back, but Tom Bennett and his son blocked me. I came back and retrieved it from the trash dumpster she threw it in. The first page was destroyed and I had to retype it.

*See* Exhibit 4 to the Affidavit of Rick A. Cain (doc. # 58-1, page 32 of 51). Ms. Miller has never explained why Defendant Bennett, after accepting a $25,000.00 down payment and without any reason to anticipate future litigation, would prevent Ms. Miller from retaining a copy of the agreement the parties just amicably executed. Plaintiff does not explain how she knew to find the executed original in a dumpster or even where that dumpster was located. If, as Ms. Miller claims, she only "retyped" the first page of the document she retrieved from the dumpster, the court would expect Ms. Miller's version of the Contract for Deed to duplicate in all other respects the Contract for Deed proffered as an exhibit by Ms. Bennett and authenticated by Ms. Tritt, the California notary. To the contrary, the two documents have glaring differences. Ms. Miller's signature on Plaintiff's exhibit is markedly different from the signature that appears on the Contract for Deed authenticated by Ms. Tritt. Plaintiff's version of the Contract for Deed

includes marginalia that substantially changes the document drafted by Mr. Cain and excises whole paragraphs included by the Bennetts' lawyer.  Ms. Miller claims that all of these changes were made before the Contract for Deed was executed and notarized on February 2, 2012.  *See* Transcript of Proceedings on May 9, 2013 (doc. #77), at 15.  It strains all credibility to suggest that Defendant would have accepted these material changes without first consulting with her counsel.[9]  Finally, Ms. Tritt states in her Affidavit that she would "never have notarized the signatures on a document that looked like [Ms. Miller's purported copy of the Contract for Deed," and offers her opinion that Ms. Miller's document "appears to have been manipulated or changed from . . . the Contract for Deed that I did, in fact, notarize."  *See* Affidavit of Jennifer L. Tritt (doc. #66-2).[10]

---

[9]I also note Rick Cain's Supplemental Affidavit (doc. #66-1) which states that Ms. Bennett's version of the Contract for Deed

> was admitted into evidence on January 25, 2013 as Exhibit E in the Foreclosure Action.  During that hearing, the Honorable Scott Myren, Circuit Court Judge, did rule that Exhibit E (as it was marked during the Foreclosure Action) was the correct Contract for Deed upon which the Foreclosure Action would be determined.  Judge Myren also ruled that Ann Marie Miller's testimony regarding her marked up copy of the Contract for Deed (. . . previously "partially" filed by Plaintiff [in this action] at Doc. No. 53-7) was not credible.

Mr. Cain's Supplemental Affidavit was tendered in advance of the hearing on June 7, 2013.  Ms. Miller made no attempt to refute Mr. Cain's assertions either before or during the hearing on June 7, 2013.

[10]During the hearing on May 9, 2013, this court noted the apparent discrepancies between the Contracts for Deed proffered by Ms. Miller and Ms. Bennett, and suggested that "I probably need to hear from the . . . notary."  *See* Transcript of Proceedings on May 9, 2013 (doc. #77), at 15.  In response to the court's concerns, Ms. Miller said she "would be more than happy to call the notary as a witness."  *Id.* at 16.  Ms. Miller has not offered any evidence that would refute the information and opinions set forth in Ms. Tritt's May 22, 2013 Affidavit.

In the absence of a credible and enforceable choice of forum provision, there is no reason to conclude that Defendant Bennett should have "reasonably anticipate[d] being haled into court" in this forum. *World Wide Volkswagen Corp.*, 444 U.S. at 297. After weighing the factual record established by the parties and considering the testimony presented at the June 7, 2013 hearing, I conclude that Ms. Miller has failed to sustain her burden to prove facts supporting personal jurisdiction by a preponderance of the evidence. *Cf. Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir.), *cert. denied*, 498 U.S. 854 (1990). Accordingly, the court recommends that Defendant's motion to dismiss for lack of personal jurisdiction be granted and the pending action be dismissed without prejudice.

   D.   Transfer

   Under 28 U.S.C. § 1404(a), a district court may transfer any civil action to any other district where the action might have been brought, "for the convenience of parties and witnesses, in the interests of justice."[11]   Underlying this venue transfer statute are the laudable goals of preventing "the waste 'of time, energy, and money' and 'protect[ing] litigants, witnesses, and the public against unnecessary inconvenience and expense.'" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964), quoting *Continental Grain Co. v. Barge, F.B.L.-585,* 364 U.S. 19, 26-27 (1960), *superseded by statute on other grounds in Ross v. Co. Outward Bound Sch. Inc.*, 822 F.2d 1524 (10th Cir. 1987). The district court retains discretion to resolve motions to transfer based upon

---

[11]It cannot be disputed that this action could have been brought originally in the District of South Dakota. *See* 28 U.S.C. § 1391(a) (in an action where subject matter jurisdiction is based upon diversity, a civil action may be brought in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced).

an individualized, case-by-case consideration of convenience and fairness. *Wada v. United States Secret Service*, 525 F. Supp. 2d 1, 9 (D.D.C. 2007); *Ervin and Associates, Inc. v. Cisneros*, 939 F. Supp. 793, 799 (D. Colo. 1996).

Ultimately, the moving party has the burden of showing that the action could have been brought in the alternative forum, the existing forum is inconvenient, and the interests of justice are better served in the alternate forum. *Wolf v. Gerhard Interiors, Ltd.*, 399 F. Supp. 2d 1164, 1166 (D. Colo. 2005). *See also Wise*, 89 F. Supp. 2d at 1191; *Chubb v. Union Pacific Railroad Co.*, 908 F. Supp. 853, 855 (D. Colo. 1995). "[U]nless the balance is strongly in favor of the movant the plaintiff's choice of forum should rarely be disturbed." *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992), quoting *William A. Smith Contracting Co., Inc. v. Traveler's Indemnity Co.*, 467 F.2d 662, 664 (10th Cir. 1972). *See also Employers Mutual Casualty Co.*, 618 F.3d at 1168 n.13 ("For more than five decades, we have required the movant to demonstrate that the balance of factors 'strongly favors' a transfer of venue under § 1404(a).").

In applying § 1404(a), the district court should weigh several factors, including the plaintiff's choice of forum,

> the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflicts of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make trial easy, expeditious and economical.

*Chrysler Credit Corp. v. County Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991). *See also Four Corners Nephrology Associates, P.C. v. Mercy Medical Center*, 464 F. Supp. 2d 1095, 1098 (D. Colo. 2006) (factors relevant to a transfer under § 1404(a) include the plaintiff's choice

of forum, the convenience of witnesses, the accessibility of witnesses and other sources of proof, the possibility of obtaining a fair trial, and all other considerations of a practical nature that make a trial easy, expeditious and economical).

Many of the factors cited in *Chrysler Credit Corp.* have little, if any, significance under the particular facts of this case.  For example, neither side has raised issues concerning the enforceability of any judgment that might be entered or the congestion of court dockets. Similarly, the parties are not suggesting that the case will turn on the interpretation or application of any law unique to either Colorado or South Dakota, or that either the District of Colorado or the District of South Dakota will provide "advantages [or] obstacles to a fair trial."

In opposing Defendant's motion to transfer, Ms. Miller contends that the parties' contractual agreement is subject to a forum-selection provision.  This court recognizes that "persuasive public policy reasons exist for enforcing a forum selection clause in a contract freely entered into by the parties, as the clauses provide a degree of certainty to business contracts." *Adams Reload Company, Inc. v. International Profit Associates, Inc.*, 143 P.3d 1056, 1059 (Colo. App. 2006) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S.1 (1972)).  "The parties' agreement as to the place of the action cannot oust a state of judicial jurisdiction, but such an agreement will be given effect unless it is unfair or unreasonable." *Id.* (quoting *ABC Mobile Systems, Inc. v. Harvey*, 701 P.2d 137 139 (Colo. App. 1985) (holding that the burden of proving that a forum selection clause is unfair or unreasonable is on the party seeking to avoid its effect)).  However, the Supreme Court has noted that a "forum-selection clause, which represents the parties' agreement as to the most proper forum, should receive neither dispositive consideration . . . nor no consideration . . . ." *Stewart Organization, Inc. v. Ricoh Corp.*, 487

34

U.S. 22, 31 (1988).  For the reasons previously stated, I find that Plaintiff's argument is not supported by any credible evidence in the record.  In the absence of an enforceable forum selection clause, the court is left to rely upon the multi-factor analysis set forth in *Chrysler Credit Corp.*

A motion to transfer under § 1404(a) should not be granted if the net effect would simply shift the inconvenience from one party to the other.  *Cf. Mohr v. Margolis, Ainsworth & Kinlow Consulting,* Inc., 434 F. Supp. 2d 1051, 1064 (D. Kan. 2006) (holding that it is best not to disturb plaintiff's choice of forum if a transfer of venue will only shift the burden on the parties).  *See also Wells Fargo Financial Leasing, Inc. v. Orlando Magic*, 431 F. Supp. 2d 955, 966-97 (S.D. Iowa 2006) (noting that '[c]ourts will normally hesitate to disturb a plaintiff's choice [of forum] unless the moving party 'demonstrates that the balance of convenience and justice weighs heavily in favor of transfer'").  Yet, the weight accorded Plaintiff's choice of forum "is only proportionate to the connection between the cause of action alleged and the chosen forum." *Blue Mako, Inc. v. Minidis*, 472 F. Supp.2d 690, 703 (M.D.N.C. 2007).  *Cf. Goodman v. Schmalz*, 80 F.R.D. 296, 302 (E.D.N.Y. 1978) ("[w]here the operative facts of the case have no material connection with this district, plaintiff's choice of forum carries less weight").

Here, the nexus between Plaintiff's claims and Colorado is virtually non-existent.  The Contract for Deed underlying Ms. Miller's claims was negotiated and executed in California, where both parties temporarily were located.  The rental properties at issue are located in South Dakota, and Ms. Miller's payments under the contract were due and owing in South Dakota.  Moreover, Plaintiff  no longer resides in Colorado.  In this case, the ties to the District of South Dakota outweigh any tangential connection this litigation may have ever had to Colorado.

The court cannot ignore the totality of circumstances in considering the convenience factor.  *See Amazon.com v. Cendent Corp.*, 404 F. Supp. 2d 1256, 1260 (W.D. Wash. 2005) (in considering the convenience factor, "the Court may look at the sheer weight of the numbers" and "should consider not only how many witnesses each side may have but also the relative importance of their testimony").  Save for Ms. Tritt, all the material witnesses in this case are participants in related proceedings in South Dakota.  The court would not be inconveniencing Plaintiff by transferring this case to South Dakota, where Ms. Miller voluntarily appeared to protect her interests and assert her counterclaim in the Foreclosure Action, and where Ms. Miller attempted to force Ms. Bennett into involuntary bankruptcy.

Accordingly, if the action is not dismissed pursuant to Rule 12(b)(2) for lack of personal jurisdiction, this court recommends, that Defendant Bennett's Motion to Transfer be granted and that this action be transferred to the District of South Dakota for further proceedings.

*III.      Limitation on Further Filings*

Federal courts have both the inherent power and constitutional obligation to protect their

jurisdiction from conduct which impairs their ability to carry out the functions mandated by

Article III of the United States Constitution.   There is no constitutional right of access to the

courts to prosecute an action that is frivolous, harassing, abusive or malicious.  *Phillips v. Carey*,

638 F.2d 207, 208 (10th Cir. 1981).  *See also Schlicher v. Thomas*, 111 F.3d 777, 81 (10th Cir.

1997) (acknowledging that the right of access to the courts is neither absolute nor unconditional).

The District Court has the power to enjoin litigants who abuse the court system.  *Tripati v.*

*Beaman*, 878 F.2d 351 (10th Cir. 1989).  Groundless and vexatious litigation will justify an order

enjoining a litigant from filing any claims without first seeking leave of court.  *See Ketchup v.*

*Cruz*, 961 F.2d 916, 921 (10th Cir. 1992); *Winslow v. Roamer*, 759 F. Supp. 670, 677-78 (D.

Colo. 1991); *Colorado ex rel. Colo. Judicial Dep't v. Fleming*, 726 F. Supp. 1216, 1221 (D.

Colo. 1989).  The District Court's ability to fairly dispense justice is compromised when it is

forced to devote its limited resources to the processing of repetitious and/or frivolous pleadings.

*In re Centrum*, 498 U.S. 177, 179-80 (1991).

As noted previously, Ms. Miller is not unfamiliar with the requirements governing a

litigant in federal court.  She has a long and well-documented history of filing abusive actions in

several federal and state courts.  In view of that pattern of behavior, I am convinced that filing

restrictions are necessary to curb the risk that Ms. Miller will continue to vexatiously impose

on limited judicial resources.

> Injunctions restricting further filing are appropriate where (1) "the litigant's
> lengthy and abusive history" is set forth; (2) the court provides guidelines as to
> what the litigant "must do to obtain permission to file an action"; and (3) the
> litigant received "notice and an opportunity to oppose the court's order before it is

37

instituted."

*Ysais v. Richardson*, 603 F.3d 1175, 1180 (10th Cir. 2010), quoting *Tripati,* 878 F.2d at 353–54.

Formal action is required to prevent Ms. Miller from initiating future abusive litigation in this

District Court.

　　　Therefore, the Court respectfully recommends that, to prevent unduly abusive litigation

in the future, Ms. Miller be enjoined from proceeding in this Court without the representation of

a licensed attorney admitted to practice in this court, unless she first obtains permission to

proceed *pro se. See, e.g., Ysais*, 603 F.3d at 1181; *Kinnell v. Graves*, 265 F.3d 1125, 1129 (10th

Cir. 2001); *Judd v. Univ. of N.M.*, 204 F.3d 1041, 1044 (10th Cir. 2000); *see also Adkins*, 2013

WL 470362, at *7.  If, in future litigation, Ms. Miller seeks leave to proceed *pro se* in an action

filed in this District Court she should be required to comply with the conditions set forth in the

Addendum attached to this Recommendation, which would be imposed by the District Court in

the form of an injunction.  *Cf. Cromar v. Railey*, 43 F.3d 1482 (table) (10th Cir. 1994)

(unpublished decision) ("Where a litigant's court access is restricted, guidelines must be set forth

so that the litigant is aware of what must be done in order to obtain the court's permission to file

an action.").  Ms. Miller has the right to oppose, in writing, the imposition of additional filing

restrictions.  *See*, *e.g., White v. General Motors Corp*., 908 F.2d 675, 686 (10th Cir. 1990), and

may state the basis of her opposition in an objection to this Recommendation.

## CONCLUSION

　　　For the foregoing reasons, Plaintiff Miller's Motion for Default Judgment (doc. #35) is

denied and the Clerk's entry of default against Defendant Bennett is hereby vacated.  This court

recommends that Defendant Tamra Bennett's Motion to Dismiss (doc. #37) be granted and that

the Second Amended Complaint be dismissed without prejudice.  In the alternative, this court

recommends that Defendant Bennett's Motion to Transfer be granted and that the action be

transferred to the United States District Court for the South Dakota for further proceedings.

It is further recommended that the District Court sanction Ms. Miller by entering an

Order enjoining Ms. Miller from proceeding in the United States District Court for the District of

Colorado, as the proponent of any claim, without the representation of an attorney licensed to

practice in the State of Colorado, and admitted to practice in this Court, unless she first has

obtained leave of this Court to proceed *pro se*.  I recommend that this limit on Ms. Miller's

ability to file or prosecute any claim in this Court, while acting *pro se*, be imposed under the

specific terms stated in the Addendum attached to this Recommendation


**Advisement to the Parties**

Within fourteen days after service of a copy of the Recommendation, any party may

serve and file written objections to the Magistrate Judge's proposed findings and

recommendations with the Clerk of the United States District Court for the District of Colorado.

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);  *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A

general objection that does not put the District Court on notice of the basis for the objection will

not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's

report and recommendation must be both timely and specific to preserve an issue for de novo

review by the district court or for appellate review."  *United States v. One Parcel of Real*

*Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir.

1996).  Failure to make timely objections may bar *de novo* review by the District Judge of the

Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc*., 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling);  *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED this 12th day of August, 2013.

BY THE COURT:

s/ Craig B. Shaffer
United States Magistrate Judge